**UNITED STATES DISTRICT COURT**          File No.4977-5
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
FLUSHING BANK as successor to
FLUSHING SAVINGS BANK, F.S.B.,

                               Case No.: 16-cv-2638 (RJS)

            *Plaintiff,*

   -against-                         **MEMORANDUM OF LAW IN**
                                             **IN OPPOSITION TO DEFENDANT'S**
ALLIANZ GLOBAL CORPORATE &         **MOTION *IN LIMINE* TO PRECLUDE**
SPECIALTY NORTH AMERICA and         **EVIDENCE OF A COURSE OF**
AGCS MARINE INSURANCE COMPANY,    **DEALING OR A 2012 CLAIM**

            *Defendants*.
-------------------------------------------------------X

      Plaintiff, Flushing Bank (the "Bank"), by its attorneys, Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, submits this opposition to the Defendant ("AGCS")'s *in limine* motion to preclude evidence of a course of dealing or a 2012 claim.

### I.    COUNTER-STATEMENT OF FACTS

Certain facts are not disputed as follows:

1. The Bank extended a line of credit loan to A 2 Z Perfumes, Inc. ("A2Z"), a New York corporation, in or about May 2009.

2. The Bank was the secured creditor of A2Z pursuant to a general security agreement in all of the assets of A2Z, including physical inventory and receivables. The Bank's rights were perfected by the filing of a UCC-1 in the Office of the Secretary of State of New York.

3. AGCS issued an insurance policy (the "Policy") in the amount of $2,000,000.00.

4. The Bank was named as the loss payee ("Loss Payee") on the Policy.

5. In or about May, 2015, A2Z reported a burglary at its warehouse to the East Brunswick, New Jersey police department.

6. A2Z filed a claim under the Policy to AGCS (the "Claim").

7. AGCS adjusted the loss at $1,292,350.00 (the "Claim Proceeds").

8. AGCS paid the proceeds directly, and solely, to A2Z on or about July 28, 2015 by wire transfer to an account of A2Z.

9. AGCS claims that it relied upon a one sentence email sent to Bhupinder Singh, owner of A2Z, by an employee of the Bank, Madhu Chowdhry, seven (7) minutes after Singh requested a "waiver" for the fact that the Bank waived its rights under the Policy to the Claim Proceeds.

10. The email in question does not reference the Policy, the Claim, the amount of Claim Proceeds, or that the Bank was waiving its rights as Loss Payee under the Policy.

11. In 2012, A2Z submitted a claim for loss to AGCS under the same Policy (the "2012 Claim").

12. A2Z requested that the Bank waive its rights as Loss Payee under the Policy with respect to the 2012 Claim.

13. The same bank employee was the initial point of contact by Singh of A2Z with respect to the 2012 Claim.

14. Chowdhry referred the request to senior management, Alan Harris, who had direct communications with a Ms. Devane at AGCS regarding the waiver request.

15. After a series of emails between Mr. Harris and Ms. Devane at AGCS in which AGCS provided specifics of the 2012 Claim to the Bank, the Bank expressly waived its rights to a specified amount of the 2012 Claim proceeds and confirmed the waiver in an email directly between Mr. Harris and Ms. Devane.

**II.    ARGUMENT**

A. Evidence Regarding the 2012 Claim is admissible, relevant and not prejudicial.

AGCS argues that evidence regarding the 2012 Claim should be excluded from the trial because it is claimed to be inadmissible, irrelevant and prejudicial. This is clearly not the case.

The evidence regarding the 2012 Claim is clearly relevant because it shows procedures followed by both the Bank and AGCS in connection with a claim under the same policy, with the same insured and loss payee and a request for a waiver by the loss payee of its rights as loss payee thereunder.

The 2012 Claim is probative of the following: (a) AGCS' notice that Ms. Chowdhry was not authorized to approve a waiver, at a time she held the same title of "Vice President"; (b) AGCS' and the Bank officer who did have authority, Alan Harris, engaged in direct

communications; (c) the Bank made an intentional, knowing determination after being provided by AGCS with information about the 2012 Claim and communicated its consent to waive its rights as Loss Payee for a specified amount of money directly to AGCS. This evidence will be proferred in connection with the breach of contract claim and it is clearly probative.

      B.  <u>The arguments and cases cited by AGCS are inapposite.</u>

AGCS argues that the 2012 Claim evidence should be precluded as inadmissible on the basis that evidence of a course of dealing can only be considered when there is ambiguity in the terms of the policy. However, that theory and the cases cited by AGCS are irrelevant here. In *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 651, 609 N.E.2d 506, 593 N.Y.S.2d 966 (1993) the insurance company sought a declaratory judgment against the insured that it was not required to defend claims related to asbestos products manufactured by the insured's predecessor. The Court of Appeals ruled that the insurer was obligated to defend the claims. In its argument concerning, *inter alia*, the interpretation of a provision on which parties held opposing views, the Court of Appeals considered whether conduct of the insured in its "practical construction" of an ambiguous provision of the policy should be considered or excluded. This is really a collateral estoppel argument, which is not relevant here. AGCS admits that the Bank was named as the Loss Payee and admits that a waiver was required in order for AGCS to pay the Claim Proceeds only to A2Z. <u>The issue is whether the one sentence email sent 7 minutes after Mr. Singh requested a "waiver" constituted a knowing, intentional waiver by the Bank of its rights as Loss Payee</u>. The interaction between the Bank as Loss Payee and AGCS with respect to the 2012 Claim under the same Policy is undeniably probative, not on the basis of collateral estoppel, but as to whether the past interaction bears relevance to the instant facts, or whether the actual knowledge obtained by AGCS in 2012, that Chowdhry lacked authority to

3

waive the Bank's rights as Loss Payee in 2012, negates AGCS' argument concerning apparent authority for the 2015 Claim.

*The Village of Lake Success v. Liberty International Underwriters*, 2009 N.Y. Misc. LEXISA 3878 at * 6 (Sup. Ct. Nassau Cty. 2009) cited by AGCS, involved a motion for summary judgment on a declaratory judgment claim that the insurance company was obligated to defend and indemnify the Village of Lake Success in an action arising out of an accident. The insurance company denied coverage on the ground that the party causing the injury (which had a contractual relationship with the Village) was not a named insured on the policy, and that, therefore, the Village should not be considered an additional insured. The trial court denied summary judgment. The reference to consideration of "evidence of a practical construction, or a course of dealing by the insured and insurer…" is not relevant here. The Bank is not the insured.

*Ultra Flex Packaging Corp. v. I.J. Litwak Realty Ltd. Partnership*, 47 A.D.3d 707, 707, 848 N.Y.S.2d 880 (2d Dept 2008) is inapposite. The trial court held that extrinsic evidence of the parties' practice was inadmissible to add or vary an agreement which is unambiguous. This is not the issue before this Court. Rather, there is no dispute as to the terms of the Policy. The 2012 Claim evidence is being proferred to demonstrate how the parties interacted under virtually identical circumstances under the Policy, and given that interaction, whether the email upon which AGCS alleges the Bank waived its rights to $1,292,350.00 is more likely than not to have constituted a waiver of the Claim Proceeds. For the same reasons, *W.W.W. Assocs. V Giancontieri*, 77 N.Y.2d 157, 162, 566 N.E.2d 639, 565 N.Y.S.2d 440 (1990) is inapposite.

Contrary to AGCS' argument, the 2012 Claim is not prejudicial, implying that there were other claims which would demonstrate a different interaction. The parties agree that there were only two (2) claims ever made under the Policy by A2Z, in 2012 and in 2015. In both cases, the

4

Bank was the Loss Payee. To argue that the 2012 Claim is irrelevent because it "involved a different loss, a different claim, a different adjuster, and an entirely different set of circumstances" misses the point. By definition, the 2012 Claim involved a different loss, claim, adjuster and set of circumstances. But, both claims were under the same Policy and between the same parties. Therefore, evidence of the handling of the request to the Bank to waive its rights under the 2012 Claim, and knowledge of who had authority to waive the Bank's rights, are clearly relevant, probative, admissible and not prejudicial.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion *in limine* and permit the Plaintiff to offer evidence concerning the 2012 Claim.

Dated: New York, New York
       February 1, 2017

                                        Respectfully submitted,

                                        PLATZER, SWERGOLD, LEVINE,
                                        GOLDBERG, KATZ & JASLOW, LLP

                                        /s/ Linda Mandel Gates
                                        Linda Mandel Gates

LMG:fjl